UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOE CUMMINGS BONNER, III,<br><br>Plaintiff,<br><br>v.<br><br>REBECCA L. CLAYS, *et al.*,<br><br>Defendants. | Case No. C05-5431  RBL/KLS<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**NOVEMBER 3, 2006** |

This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff, Joe Cummings Bonner, III, complains of events that occurred at Stafford Creek Corrections Center (SCCC), where he was previously incarcerated. Plaintiff alleges his civil rights were violated when Defendant Jayme Rudloff failed to remove him from a drug treatment program when he requested that she do so and when she sent him to Administrative Segregation after Plaintiff quit the program. Plaintiff seeks damages and disciplinary action against Defendant Rudloff.

Defendant Rudloff  moves for summary judgment, arguing that Plaintiff has no constitutional right to be placed in or removed from any particular treatment program and no constitutional right regarding his placement in Administrative Segregation. Defendant Rudloff also argues that she did not

REPORT AND RECOMMENDATION- 1

personally participate in any of the acts alleged by Plaintiff.  (Dkt. # 43).  Plaintiff has not responded to Defendant Rudloff's motion.  Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the Court as an admission the motion has merit.  Having reviewed Defendant's motion and the balance of the file, the Court recommends that the motion be granted and Plaintiff's claims against Defendant Rudloff be dismissed with prejudice.

## I. FACTS

The following facts are undisputed.  Plaintiff entered DOC custody on December 9, 2003, on a conviction of Second Degree Robbery.  (Dkt. # 43, Exh. 2).  Plaintiff entered prison with a heroin addiction problem, which Plaintiff believes was an underlying cause for committing his crime.  (Id., Exh. 1, Attach. A).  Approximately one and one-half years later, Plaintiff volunteered for a drug treatment program at SCCC called the Odyssey program.  (Id. at 12:20-13:23).  The Odyssey program is a long-term, intensive treatment program for chemical dependency.  (Id. at Exh. 3, ¶ 3).  The program is operated by a DOC contractor, CiviGenics.  (Id.).  Odyssey can last anywhere between nine to eighteen months depending on the motivation of the offender in the program.  (Id.).  When Plaintiff first began the program, he was highly motivated, but eventually became dissatisfied with the program when he discovered it was "more of an intense" program, and the program was more long term than he expected.  (Id. at ¶¶ 7-8; Exh. 1, Attach. A at 16:13-24, 31:5-7)

On May 2, 2005, three days before Plaintiff was placed in Administrative Segregation, Plaintiff had a conversation with Defendants Clays, Zander and Rudloff where he complained about the Odyssey program.  (Id., Exh. 1, Attach. A at 29:14-30:8, 32:12-17; Exh. 3 at ¶ 8; Exh. 4, Attach. A).  Defendant Rudloff was Plaintiff's Correctional Unit Supervisor ("CUS").  (Id., Exh. 3 at ¶¶ 2, 7).  At this meeting, Plaintiff told Defendant Rudloff and the other Defendants that he wanted to be removed from the Odyssey program.  (Id. at ¶ 8).  According to Plaintiff, he informed Defendant Rudloff that the reason he wished to be removed was due to his mental illness.  (Id., Exh. 1 at 29:14-19, 30:20-31:7).  Defendant Rudloff does not recall this being one of Plaintiff's reasons for wanting to be released from the program, nor does Plaintiff mention his mental illness in the grievance he filed

REPORT AND RECOMMENDATION- 2

regarding this conversation. (Id. at ¶ 8; Exh. 4, Attach. A). Defendant Rudloff did not have the authority to release Plaintiff from the Odyssey program. (Id. at ¶¶ 5, 9).

On May 5, 2005, a Mr. Schneider asked the entire Odyssey program if anybody would like to quit, and Plaintiff raised his hand. (Id., Exh. 1, Attach. A at 18:22-19:16). Plaintiff was then taken to Administrative Segregation on the authority of Defendant Rudloff, pending an investigation into Plaintiff's suitability for the Odyssey program. (Id., Exh. 3 at ¶ 10, Attach. A). Inmates can be placed in Administrative Segregation if prison officials deem the inmate poses a risk to himself, others, or the security of the institution, among other reasons. (Id., Exh. 5, Declaration of Marjorie Owens, DOC Policy 320.200(II)(A)-(D)).

When an inmate quits a treatment program, it is common practice in a therapeutic community to remove that person from the program and program living environment so that other program participants are not negatively affected. (Id., Exh. 3 at ¶ 10). Refusing to program, which would include participating in the Odyssey program, is also subject to infraction. See WAC 137-25-030 (557). When placing Plaintiff in Administrative Segregation, Defendant Rudloff had no reason to believe that Plaintiff was going to harm himself. (Id., Exh. 3 at ¶ 11; Exh. 1, Attach. A at 30:23-31:7; 31:13-24). Twenty-four hours after being placed in Administrative Segregation, Plaintiff attempted suicide by overdosing on ibuprofen. (Id., Exh. 1, Attach A at 21:25-22:11). Plaintiff received hospital care, recovered, and was eventually transferred to the Monroe Correctional Complex. (Id.)

## II. DISCUSSION

**A.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

REPORT AND RECOMMENDATION- 3

nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

**B.     Defendant Rudloff Did Not Violate Plaintiff's Civil Rights By Refusing To Remove Plaintiff From the Odyssey Program**

Plaintiff alleges that Defendant Rudloff violated his civil rights by refusing to remove him from the Odyssey drug treatment program.

Goals and considerations fundamental to the penal system justify limiting the privileges and rights of prison inmates. Sandin v. Conner, 515 U.S. 472, 485 (1995). One of those fundamental goals is the rehabilitation of offenders. McKune v. Lile, 536 U.S. 24, 36 (2002) (plurality opinion) (quoting Pell v. Procunier, 417 U.S. 817, 823 [1974]).  Mandatory rehabilitation programs for sex offenders and drug offenders are not violative of the civil rights of prison inmates.  For example, in McKune, the United States Supreme Court held that requiring inmates to choose between participating in a sex offender treatment program or losing a whole host of privileges, including

REPORT AND RECOMMENDATION- 4

visitation rights, earnings, work opportunities, and access to a personal television, along with a transfer to a potentially more dangerous maximum-security unit, does not impose an atypical and significant hardship in relation to ordinary incidents of prison life. *See generally* McKune v. Lile, 536 U.S. 24.

Thus, requiring Plaintiff to continue participating in the Odyssey program did not violate any of his due process rights.

**C.    Defendant Rudloff Did not Personally Participate in Plaintiff's Placement in the Odyssey Program**

To obtain relief against a defendant, the plaintiff must prove the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981); Sherman v. Yakahi, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, which he or she is legally required to do, which causes the plaintiff's deprivation. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. Rizzo v. Goode, 423 U.S. 362, 370-71, 375-77 (1976); Leer v. Murphy, 844 F.2d 628 (9th Cir. 1988). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); Rizzo, 423 U.S. at 371.

The record reflects that Plaintiff's placement in the Odyssey program was based on a chemical dependency assessment as well as his own decision to volunteer for the program.  (Dkt. # 43, Exh. 1, Attach. A at 12:20-13:23; Exh. 3 at ¶ 4).  As the CUS, Defendant Rudloff's responsibilities were to hold Plaintiff accountable for his behavior based on the information relayed

REPORT AND RECOMMENDATION- 5

to her by Odyssey staff. (Id., Exh. 3 at ¶ 6). Defendant Rudloff did not have the authority to remove Plaintiff from the Odyssey program. (Id. at ¶ 9). It is also clear from the record that Defendant Rudloff did not personally participate in Plaintiff's admission to the Odyssey program nor did she have the authority to remove him from the program. Accordingly, Defendant Rudloff cannot be held liable for any civil rights violation caused by Plaintiff's admission into or inability to be removed from, the Odyssey program.

**D. Defendant Rudloff Did Not Violate Plaintiff's Civil Rights By Placing Plaintiff In Administrative Segregation**

   **1. Defendant Rudloff Did Not Violate Plaintiff's Due Process Rights**

Plaintiff alleges that Defendant Rudloff violated his civil rights by placing him in Administrative Segregation pending an infraction investigation. Prison conditions do not violate the Due Process Clause unless officials impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 484. In Sandin, the Court found that thirty days of segregated confinement did not impose an atypical and significant hardship on prison inmates. Id. at 475-76, 486.

In addition, Washington State inmates do not have a protected liberty interest in remaining in the general prison population. Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993). Inmates may permissibly be removed from the general prison population to Administrative Segregation if they pose a threat to themselves, or pose a threat to others or the security of the institution. Id.; WAC 137-32-005.

It is undisputed that Plaintiff was placed in Administrative Segregation in order to prevent him from negatively impacting inmates who were still participating in the treatment program. (Dkt. # 43, Exh. 3 at ¶ 10). It is also undisputed that this is a common practice among therapeutic treatment communities. (Id.). In addition, Plaintiff's actions were subject to infraction. WAC 137-25-030 (557). Therefore, placing Plaintiff in Administrative Segregation for one day cannot be said to have imposed an atypical and significant hardship.

REPORT AND RECOMMENDATION- 6

### 2. Plaintiff's Placement in Administrative Segregation Was Reasonably Related to a Legitimate Penological Interest

Finally, Defendant Rudloff argues that even if the Court were to find that Plaintiff's placement in Administrative Segregation violated some right, that placement was reasonably related to the legitimate penological interest of rehabilitating prison inmates with drug addictions.

A prison regulation that impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). Defendant submits that it is reasonable for prison officials to transfer inmates who do not want to participate in treatment programs out of units where those programs are held, to make room for inmates who are willing to participate. *See* McKune, 536 U.S. at 38-39.  As noted above, this is a common practice in a therapeutic treatment community, (Dkt. # 43, Exh. 3 at ¶ 10), and is reasonably related to the legitimate penological interest of rehabilitating inmates with drug addictions.

As the Court has found that the Plaintiff's placement in Administrative Segregation for one day was not an infringement of any liberty interest, it is not necessary for the Court to determine whether such placement was reasonably related to the legitimate penological interest of rehabilitation.  The undisputed facts certainly illustrate, however, that moving Plaintiff out of the program is a common practice in the therapeutic treatment community and would make room for rehabilitating inmates with drug addictions who want to participate in the program.

### 3. Defendant Rudloff Did Not Violate Plaintiff's Eighth Amendment Right Against Cruel and Unusual Punishment

Plaintiff also asserts that his placement in Administrative Segregation constituted cruel and unusual punishment.  (Dkt. # 43, Exh. 1, Attach. A at 21:18-24, 29:6-13).   Defendant Rudloff argues that Plaintiff's placement in Administrative Segregation, without more, is not an atypical or significant hardship on daily prison life, and accordingly, is not cruel and unusual punishment.

To prove a violation of the Eighth Amendment for mistreatment of a medical condition, including a mental condition, a plaintiff must show deliberate indifference to a serious medical need.

REPORT AND RECOMMENDATION- 7

Estelle v. Gamble, 429 U.S. 97, 104 (1976); Doty v. County of Lassen, 37 F.3d 540 (9th Cir. 1994). Assessing a claim of deliberate indifference requires a two-pronged analysis: an objective component and a subjective component. Hudson v. McMillian, 503 U.S. 1 (1992). Under the objective prong, a plaintiff must show he or she was "incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The subjective prong requires proof that the prison official: (1) was aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm; (2) actually made the inference that the substantial risk of serious harm to the plaintiff existed; and (3) knowingly disregarded the risk. Id. at 837.

The Seventh Circuit has established a test for adjudicating cases involving an inmate's attempted or completed suicide, stating that in order to prove deliberate indifference, the plaintiff must show both: (1) a prison official was cognizant of the significant likelihood that an inmate may imminently seek to take his own life; and (2) must fail to take reasonable steps to prevent the inmate from performing the act. Sanville v. McCaughtry, 266 F.3d 724, 737 (7th Cir. 2001). The Eighth Circuit phrases its test somewhat differently, requiring plaintiffs to show: (1) defendants knew the prisoner presented a substantial suicide risk; and (2) defendants failed to respond reasonably to that risk. Coleman v. Parkman, 349 F.3d 534, 538 (8th Cir. 2003).

Defendant concedes that suicide is a sufficiently serious harm to satisfy the objective prong of the deliberate indifference test. However, Defendant argues that Plaintiff fails to present evidence establishing that Defendant Rudloff actually knew Plaintiff would attempt suicide. Plaintiff alleges he told Defendant Rudloff he was a paranoid schizophrenic and had memory problems, but Plaintiff clearly admits he did not tell Defendant Rudloff he was suicidal. (Dkt. # 43, Exh. 1, Attach. A at 30:23-31:7, 31:13-24).

The fact that Plaintiff had problems with his mental health, standing alone, does not prove there was a substantial risk that Plaintiff was going to attempt suicide. Sanville, 266 F.3d at 738; Matos ex rel. Matos v. O'Sullivan, 335 F.3d 553, 558 (7th Cir. 2003). Plaintiff has not shown that Defendant Rudloff knew that placing Plaintiff in Administrative Segregation would somehow cause

REPORT AND RECOMMENDATION- 8

him to attempt suicide.  Plaintiff has not alleged a history of suicide attempts and there is no evidence showing that Defendant Rudloff, his CUS, should have been aware of this possibility. (Dkt. # 43, Exh. 3 at ¶ 11).

Accordingly, Defendant Rudloff's motion for summary judgment should be granted on Plaintiff's claim that Defendant Rudloff's placement of him in Administrative Segregation constituted cruel and unusual punishment.

### III. CONCLUSION

For the reasons stated above the court should **GRANT** Defendant Rudloff's motion for summary judgment and dismiss plaintiff's claims with prejudice against her.  A proposed order accompanies this Report and Recommendation.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **November 3, 2006**, as noted in the caption.

DATED this 3rd day of October, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 9